

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Dwight Whitwell
Criminal District Attorney
Collin County
McKinney, Texas

Dear Sir:

Opinion No. O-6376
Re: Does the two-year or four-
year statute of limitation
apply to a suit on the surety
bond of the Tax Assessor-Col-
lector of Collin County?
And other questions.

We have received and carefully considered your request
for an opinion on the above matters, said request reading as fol-
lows:

"Will you kindly give me the benefit of an
opinion from your department upon the following
questions.

"During the past four years the Tax Assessor-
Collector of this county in carrying out the duties
imposed upon him by the automobile certificate of
title act, Article 1436, particularly with reference
to Section 57, which requires him to collect a 50¢
fee, followed the practice of depositing these fees,
when collected, in a personal account to his credit
in the County Depository, and from this account he
remitted to the State the 25¢ due the Highway Depart-
ment, and he has not accounted to Collin County in any
manner for the 25¢ that the Statute authorized him
to retain, but has spent such moneys in giving all
of his official deputies unauthorized increases in
salary and paying various other operating expenses
to his office without securing any order from the
Commissioners' Court approving such expenses.

Honorable Dwight Whitwell, Page 2

"I call your attention to the case of State vs. Glass, 167 S. W. (2d), page 296, wherein the Court held that this 25¢ fee was an official fee of office and should be paid to the county.

"This Collector took office on the first day of January, 1941, and continued in office until December 31, 1944, serving two two-year terms. His first official bond was filed and approved by the Commissioners' Court in 1941.

"Question No. 1: Does the two year or four year statute of limitations apply to a suit on this bond? In this connection, I call your attention to the case of Bexar County vs. Maverick, 159 S. W. (2d), page 140, in which the Court held that a Collector's bond conditioned as required by the Statute is only a collateral security for the performance of the statutory duties of the office and is not a contract in writing and a suit on such bond is barred in two years. Your attention is further called to Article 6003 A of the Civil Statutes which specifically provides that for all purposes of limitation suits on official bonds shall be considered and treated as actions for debt founded upon a contract in writing and governed by the four year statute of limitation. This act was passed in 1941, and became effective September 3, 1941.

"Question No. 2: Is this statute legally retroactive so as to apply to our Collector's bond that was executed by the Surety Company January 1, 1941? If it should be your opinion that this act would be effective as applied to misapplication of funds occurring after the effective date of the act, then could the Surety Company be held liable under their bond for all moneys misapplied after September 1941, and if not, then is there any way in which the Surety Company may be held under this bond executed January 1, 1941?

"Question No. 3: When does the statute of limitations begin to run on an official's failure to pay over money belonging to the County? In this connection, I call your attention to the fact that this

county operates under what is known as the Officer's
Salary Bill and under that law, each officer is re-
quired to report at the end of each 30 days his of-
ficial collections and pay them in to the County
Treasurer to be credited to the Officer's Salary
Fund. He is further required under the general
statutes covering County finances and particularly
under the fee statute to file an Annual Report set-
ting up his total collections and disbursements for
his office each year. Therefore, would limitations
run on a monthly basis from the time he should have
paid his monthly collections to the County or would
it run from the end of each year when he should have
made his Annual Report to the County, and in the
event that discovery of the misapplication was not
made until after said officer went out of office,
would limitations run from the time of the discovery
of the misapplication?

"Question No. 4: Is it the official duty of
the County Attorney to bring a civil suit against
the ex-collector and his sureties to recover this
money? In this connection your attention is called
to Article 339 of the Civil Statutes which provides
that when it come to the knowledge of any District
or County Attorney that any officer in his District
or County intrusted with the collection or safe-
keeping of any public funds is in any manner whatso-
ever neglecting or abusing the trust confided in him,
or any way failing to discharge his duties under the
law he shall institute such proceedings as are neces-
sary to compell the performance of such duties by such
officer and to preserve and protect the public inter-
est. The language of the above quoted statute would
seem to apply only to those officers now in office and
not to ex-officers and your opinion is therefore,
needed to clarify our position with reference to our
authority to act in this matter. If you should hold
that it is not the official duty of the County Attorney
to bring a civil action against this officer and his
sureties then is there any prohibition that would pre-
vent the Commissioners' Court from employing the County
Attorney to represent the County and to pay him such
compensation in addition to his statutory salary as
might be agreed upon between the Court and the Attorney?

Honorable Dwight Whitwell, Page 4

"Your opinion on this matter is desired
before January 31, so that we may file the neces-
sary suit to stop the running of limitation, as
soon as possible. Thanking you for your coopera-
tion in this matter, we are"

In the case of Bexar County v. Maverick, et al., 159
S. W. (2d) 140, writ refused, the Court of Civil Appeals was
dealing with a question similar to that asked by you and in
which the facts were that appellee, Maury Maverick, had executed
the statutory bond required of Tax Collectors, conditioned that
he should "faithfully perform and discharge all of the duties
required of him by law as Tax Collector." After referring to
and quoting from a number of Texas cases dealing with similar
questions, some of which were by the Commission of Appeals and
all of which hold that such causes of action were governed by
the two-year Statute of Limitation, the Court held as follows:

". . . It is readily seen that this does
not within itself create a contract to do more
than perform his official duties. It has been
definitely held that obligations created by stat-
ute are subject to the bar of the two-year statute
of limitation. This case is easily distinguishable
from that line of cases where the suit is based upon
a bond which by its own terms provides for the pay-
ment of money to the county. In such cases the suit
is evidenced by and based upon a contract in writing,
but the obligation sued upon in the present case is
not based upon or evidenced by a contract in writing,
as is required by Section 1, Art. 5527, Vernon's Ann.
Civ. Stats."

But the Legislature sought to, and we think did, correct
this situation by passing Art. 6003a, Vernon's Annotated Civil
Statutes, which became effective October 1, 1941, and which reads
as follows:

"That in all suits on account of the defalca-
tion of, or misapplication, or misappropriation of
money by, any public officer in this State the of-
ficial bond or bonds of such officers executed after
this Act takes effect shall inure to the benefit of
the persons aggrieved by such defalcation, misappli-
cation, or misappropriation occurring during the

> period covered by such bonds, and that for all
> purposes of limitation such suits by such persons
> on such bonds shall be considered and treated as
> actions for debt founded upon a contract in writ-
> ing and governed by the four-year Statute of Limi-
> tation. Acts 1941, 47th Leg., p. 383, ch. 213, § 1."

It will be noted that, while Art. 6003a became effective on October 1, 1941, it applies only to bonds executed after said date. Besides, the general rule of statutory construction is that a limitation statute is presumed to be prospective in operation, unless its terms clearly show a legislative intent that it should have a retroactive effect. 28 Tex. Jur., Sec. 11, p. 85.

Under the holding in the Maverick and similar cases above referred to, such of the fees referred to by you as were due prior to October 1, 1941, the effective date of Art. 6003a, are barred by the two-year statute of limitation. Such of said fees as are more than two years past due and which became due prior to the execution of an official statutory bond by said Tax Collector after Art. 6003a became effective are also barred by the two-year statute of limitation. Any of such fees as became due after the execution of an official statutory bond by said Tax Collector after the effective date of Art. 6003a would be governed by the four-year statute of limitation and would not be barred.

Said Art. 6003a is not retroactive under its terms so as to apply to a Tax Collector's bond that was executed by the surety company on January 1, 1941. Neither can the surety company be held for the misapplication of any funds occurring after the effective date of said Act under the bond executed on January 1, 1941. We know of no way by which the surety company can be held under the bond executed January 1, 1941.

Article 3912e, Sec. 1, Vernon's Annotated Civil Statutes, contains the following provision:

> ". . . provided, however, that the assessor
> and collector of taxes shall continue to collect and
> retain for the benefit of the Officers' Salary Fund
> or funds hereinafter provided for, all fees and com-
> missions which he is authorized under law to collect;
> and it shall be his duty to account for and to pay all
> such monies received by him into the fund or funds cre-
> ated and provided for under the provisions of this Act;
> . . ."

Honorable Dwight Whitwell, Page 6

Article 3912e, Sec. 3 of said statutes contains the following provision:

". . . provided, however, that the assessor and collector of taxes shall continue to collect and retain for the benefit of the Officers' Salary Fund or funds hereinafter provided for all fees and commissions which he is authorized under law to collect; and it shall be his duty to account for and to pay all such monies received by him into the fund created and provided for under the provisions of this Act; . . ."

Article 3912e, Sec. 5 of said statutes contains the following provisions:

"It shall be the duty of all officers to charge and collect in the manner authorized by law all fees and commissions which are permitted by law to be assessed and collected for all official service performed by them. As and when such fees are collected they shall be deposited in the Officers' Salary Fund, or funds provided in this Act. . ."

It is our opinion, therefore, that the statute of limitation begins to run from the time a Tax Collector collects such fees as the above statute requires that such fees be deposited in the Officers' Salary Fund as and when collected.

Article 335, V. A. C. S., is as follows:

"Whenever a district or county attorney has collected money for the State or for any county, he shall within thirty days after receiving the same, pay it into the treasury of the State or of the county in which it belongs, after deducting therefrom and retaining the commissions allowed him thereon by law. Such district or county attorney shall be entitled to ten per cent commissions on the first thousand dollars collected by him in any one case for the State or county from any individual or company, and five per cent on all sums over one thousand dollars, to be retained out of the money when collected, and he shall also be entitled to retain the same commissions on all collections made for the State or for any county. This article shall also apply to money realized for the State under the escheat law."

Article 339, V. A. C. S., is as follows:

"When it shall come to the knowledge of any
district or county attorney that any officer in
his district or county entrusted with the collec-
tion or safe keeping of any public funds is in any
manner whatsoever neglecting or abusing the trust
confided in him, or in any way failing to discharge
his duties under the law, he shall institute such
proceedings as are necessary to compel the perform-
ance of such duties by such officer and to preserve
and protect the public interests."

In the case of Lattimore, et al. v. Tarrant County,
124 S. W. 205, there was involved the right of the county attor-
ney to retain a fee in the sum of $500.00 collected by him from
the county for handling a suit in which the county was plaintiff
and which was brought to recover a large amount of money claimed
by the county against the county clerk of said county and his
bondsmen. The trial court instructed judgment against the county
attorney as to said $500.00 fee, and the Court of Civil Appeals
sustained this holding on the ground that the statute (Art. 300,
now Art. 339) made it the duty of said county attorney to bring
said suit, and that the contract to pay him such fee was forbid-
den by law and void. The Court also held that Art. 297, (now
Art. 335) provided his compensation for such services and that
he and the commissioners' court were not at liberty to disregard
that law and substitute a different compensation, however desir-
able such arrangement might be to all parties.

In the case of State v. Bratton, et al., 192 S. W. 814,
writ refused, there was involved the authority of the county attor-
ney to bring a suit in the name of the State against a Tax Collec-
tor to recover funds due the State. In this instance the county
attorney had brought such a suit, recovered judgment therein and
the judgment had been paid. The county attorney had retained a
commission for his services, and the Attorney General later brought
suit against all parties to the original suit, alleging that said
county attorney had no lawful authority to bring said suit and
that the satisfaction of the judgment therein did not discharge
any of the parties defendant. On the trial it was agreed that,
inasmuch as the State had received all except the amount claimed
by the county attorney as his commission, that sum only was in
controversy. The trial court rendered judgment that the State
take nothing by its suit. In affirming this judgment the Court
of Civil Appeals held as follows:

Honorable Dwight Whitwell, Page 7

"By virtue of article 363 of the Revised Statutes of 1911, the county attorney is entitled to retain as his commission, on all moneys properly collected by him for the state, the sum of 10 per cent. on the first thousand, and 5 per cent. on the balance of any collection in any one case. The sum retained by the county attorney in this case is in accord with the percentage allowed by the above statute. Therefore the question in the case is: Did the county attorney of Falls county have the right and power to sue for and collect the money due the state of Texas by the tax collector and his sureties? The statutes bearing upon the question are articles 4419 and 366 of the Revised Statutes of 1911.

(We have omitted copying said Articles 4419 and 366 as copied in said opinion since Article 4419 has nothing to do with the question here being considered and Article 366 is now Article 339 hereinabove set out).

". . . .

"It seems to be conceded by both parties that the issue in the case involves a construction of the statutes above quoted, rather than of those sections of the Constitution prescribing the respective duties of the Attorney General and of the county attorney. We hold, however, that under section 21 of article 5 of the Constitution the Legislature could confer upon the county and district attorneys all the powers and duties imposed by article 366 of the Revised Statutes of 1911. Does article 366 confer upon county attorneys the authority to sue for and collect such money due the state as that involved in the Falls county suit?

"In the case of Terrell v. Greene, 88 Tex. 539, 31 S. W. 631, the commissioners' court had employed private counsel to represent the county in a suit against the county treasurer and his sureties, for the recovery of funds lost through the failure of the

Honorable Dwight Whitwell, Page 8

City National Bank of Ft. Worth, where the
treasurer had deposited the funds. The county
attorney, being denied the right to represent
the county by the district judge, sought, by an
original proceeding for mandamus in the Supreme
Court, to compel the district judge to recognize
this right. After quoting article 260, now article
366, of the Revised Statutes, the Supreme Court says:

"'This article not only confers the power,
but imposes a duty, upon the county attorney to
perform the acts therein specified. In substance,
it requires the county attorney that, in case it
shall come to his knowledge that any officer in-
trusted with the safe-keeping of any public funds
is in any manner neglecting or abusing his trust,
or failing to discharge his duties under the law,
it shall be the duty of the county attorney to
institute such proceedings as are necessary to
preserve and protect the public interests. This
language embraces every act which was required to
be performed in order to preserve the funds of the
county in this instance. The admitted facts show
that Thomas B. Collins was the treasurer of Tarrant
County, and by law was charged with the custody and
safe-keeping of its funds; that he failed to dis-
charge his duty in safely keeping and accounting
for such funds; and upon these facts it became
necessary that a suit should be filed in order to
preserve and protect the public interests--that is,
the money in his hands belonging to the county. It
is difficult to make an argument to show that this
plain language embraces the duty on the part of the
county attorney to bring a suit for this purpose.
It is clear, comprehensive, and unambiguous, and
requires no argument or reasoning to apply it to
the facts of this case.'

"We regard this holding of our Supreme Court
as settling the question that the county attorney
has authority to institute suit and represent the
state in precisely this character of case. It is
true that in the above case the suit appears to have
been in the name of the county, and was possibly for

county funds only, while in the present case the
suit is in the name of the state, and purports to
be for state funds only; but the same statute and
section of the Constitution that gave the county
attorney authority to represent the county give
him power to represent the state. In fact, the
Constitution carries express power to represent
the state, and the statute covers 'any public funds.'"

See also the case of Bexar County v. Davis, 223 S. W.
558, writ refused, wherein it was held that the district attorney
had the authority to bring a suit in the name of the county where
the alleged facts came within the provisions of Article 366 (now
Art. 339), said suit having been brought to recover for salary
drawn out of the county treasury by the county judge. The Court
also held in this case that, while it is the duty of the county
treasurer to direct prosecution according to law for the recovery
of all debts that may be due his county and superintend the col-
lection thereof, full authority is given the district attorney to
institute suits under the circumstances named in Article 366 (now
Art. 339) whether the Treasurer directs the prosecution or not,
and whether the suit is directed by the Commissioners' Court or
not.

We also direct your attention to the case of J. R.
Philips Investment Co., et al. v. Road District No. 18 of Limestone
County et al., 172 S. W. (2d) 707, writ refused, wherein it was
held that the County Attorney of Limestone County had authority
under Article 339 to bring a suit for the recovery of money il-
legally paid to J. R. Philips Investment Company under a contract
entered into with said company by the Commissioners' Court of said
county.

We think it is clear, therefore, that it is the official
duty of the county attorney to bring a civil suit against the Tax
Collector referred to and the surety on his bond to recover said
money. We do not believe that the fact that said Tax Collector has
gone out of office makes any difference as to the duty of the county
attorney in this respect, as said Tax Collector was an officer at
the time that the obligations arose and same are not cancelled or
discharged by his going out of office.

Ordinarily the Commissioners' Court alone determines
whether litigation shall be instituted in favor of the county, and
in some instances the county treasurer has the statutory authority

Honorable Dwight Whitwell, page 10

to protect the county's rights and direct the institution of suit in his name for the use of the county. It might be well, therefore, to have the approval of these officials in this instance, though it is our opinion that the county attorney has the concurring right, as well as that it is his duty, to bring the action. Hoffman et al. v. Davis, 70 S.W. (2d) 637, 100 S.W. (2d) 94.

Under Article 335, and the case of Lattimore v. Tarrant County, 124 S.W. 205, the commissions or fees of the county attorney are clearly fixed, which said commissions or fees are to be paid into the Officers' Salary Fund. Article 3912e, Sec. 5. For your information as to the handling of these commissions or fees, we hand you a copy of our opinion No. 0-3243, holding that all commissions collected under authority of Article 335 are to be paid into the Officers' Salary Fund.

Trusting that this satisfactorily answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*
Jas. W. Bassett
Assistant

JWB:FO

APPROVED FEB 6, 1945

FIRST ASSISTANT
ATTORNEY GENERAL


APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN